**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (TOLEDO)**

R. TODD STERLING,
              Plaintiff,

      vs.

EXPERIAN CREDIT, TRANSUNION
CREDIT, EQUIFAX CREDIT and
CREDIT KARMA,
              Defendants.

CASE NO. 3:19-cv-02993-JJH

Judge Jeffrey J. Helmick
Magistrate Judge James R. Knepp, II

**TRANS UNION, LLC'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S SECOND MOTION TO COMPEL**

Defendant Consumer Reporting Agency, Trans Union, LLC, improperly identified as TransUnion Credit ("Trans Union"), by counsel, hereby submits its Response In Opposition To Plaintiff's Second Motion To Compel [Doc. No. 40] (the "Motion").

The Motion should be denied in this purported Fair Credit Reporting Act ("FCRA") case where pro se Plaintiff makes the fantastical claim that Trans Union manipulated his credit score that he obtained through Credit Karma in an effort to entice Plaintiff to apply for credit that he was not otherwise qualified to obtain because the Motion improperly seeks an order compelling Trans Union to produce information and documents Trans Union has already produced and information regarding <u>all</u> of Trans Union's policies and procedures for an unlimited time frame, all of which are completely unrelated to Plaintiff's absurd claims, and because:

    1.      Plaintiff failed to comply with Federal Rule of Civil Procedure 37 or Local Rule 37.1 requiring him to confer in good faith with Trans Union before filing the Motion;

2.      The Motion fails to identify in general, much less with any specificity, which discovery responses are at issue;

3.      Trans Union properly responded to Plaintiff's Third Set Of Requests for Discovery, which Trans Union guesses may be the focus of Plaintiff's Motion To Compel, by providing all relevant information requested including producing a complete copy of Plaintiff's credit file, as well as referring Plaintiff to Trans Union's prior responses; and

4.      Plaintiff should be required to pay Trans Union's reasonable costs and fees incurred in preparing its Response In Opposition to the Motion.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

On December 17, 2019, Plaintiff filed his Complaint in the Common Pleas Court of Allen County, Ohio. See Doc. No. 1-2 (the "Complaint").  Plaintiff alleges, among other things, that Defendants (consumer reporting agencies) maintain "real" and "false" credit scores (id. at ¶¶ 30, 31), "Defendants intentionally sabatoged [sic] [his] FICO score" (id. at ¶ 34), "that the credit bureaus harbors [sic] a secret list of people blackballed due to prior credit mistakes" (id. at ¶ 35), "that their [sic] should be 1 [credit scoring] model that everyone is subject to" (id. at ¶ 36) and that "the fake score generated by the bureaus is used to manipulate the citizen in applying for small loans prepaid credit cards or credit with no collateral in small amounts" (id. at ¶ 38).[1]

Plaintiff requests from the Court, in addition to awarding Plaintiff $250,000 from each Defendant, that it order "the Bureaus to abolish the dual score system," and to "raise the Plaintiffs [sic] credit score 50 points." Id. at ¶ 38.  The action was subsequently removed to this Court on December 30, 2019. See Doc. No. 1.

---

[1] Notably, Trans Union's counsel has informed Plaintiff on multiple occasions that the existence of multiple credit scoring models is not an actionable claim.

1.      **Plaintiff's First Set Of Discovery Requests**

On January 23, 2020, prior to the Federal Rule of Civil Procedure ("Rule") 26(f) conference, Plaintiff prematurely served Trans Union with his first set of discovery requests (the "First Requests"), which included twenty-seven Requests For Admission directed at Defendants, Trans Union, Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax") and Credit Karma (together, "Defendants"). Trans Union immediately notified Plaintiff that the First Requests were premature under Rule 26(d), and that Trans Union would consider the First Requests served on the date of the Rule 26(f) conferral.

On March 18, 2020, the parties conducted a Rule 26(f) conference, and forty-four days later (after agreeing with Plaintiff to a mutual two-week extension), on May 1, 2020, Trans Union responded to Plaintiff's First Requests (the "First Responses"), asserting various specific objections to terms identifying how and why such were improper or unclear, were not directed at Trans Union or sought information outside the scope of Rule 26(b), and answering the unobjectionable portion of the requests. On May 11, 2020, Plaintiff, without conducting the required Rule 37 meet and confer, filed a First Motion To Compel. See Doc. No. 33. On May 18, 2020, Trans Union's counsel contacted Plaintiff informing him that his filing of the First Motion To Compel was procedurally improper under the Court's Case Management Conference Order [Doc. No. 20] (the "Order") and Local Rule 37.1. In addition, counsel informed Plaintiff how Trans Union properly responded to the First Requests and provided answers where it could, and specifically identified why and how the terms were ambiguous and compound in nature, sought information from other parties, and applied an unlimited timeframe. After the conversation, Plaintiff agreed to withdraw the First Motion To Compel, see Doc. No. 34, and made no further

requests for supplemental responses. <u>See</u> Declaration of Evan R. Rutter ("Rutter Decl.") at ¶ 6, attached hereto as Exhibit A.

> ### 2.      Plaintiff's Second Set Of Discovery Requests

On April 27, 2020, Plaintiff served Trans Union with a second set of discovery requests (the "Second Requests," attached hereto as Exhibit B), which included thirty Interrogatories,[2] one Request For Production of Documents and thirty-five more Requests For Admission.  In addition to seeking a wide variety of information and documents, Plaintiff sought information regarding "what policy and procedure[s] [are] used when permitting an entity to place a collection account on a consumers [sic] credit report," "the procedure from the first step to the determination step how you handle a consumers [sic] credit report dispute on any given item," "what punitive procedures [Trans Union] take[s] against any entity found to have placed a fradulant [sic] collection account on a consumers [sic] report," "[h]ow [Trans Union] determines who can and cannot place collections accounts on a consumers [sic] crfedit [sic] report," and "[w]hat process [Trans Union] use[s] to ensure that a consumer has the same credit score on all 3 credit bureaus." <u>See</u> Second Requests, Interrogatory Nos. 12-15, 26.

On June 10, 2020, Trans Union responded to the Second Requests (the "Second Responses"), again asserting objections to why and how each specific request included improper terms or sought information or documents outside the scope of Rule 26(b), answered the unobjectionable portion of the Second Requests and produced 230 pages of documents consisting of Plaintiff's entire consumer relations documents including all of Plaintiff's contacts with Trans Union, Plaintiff's credit file at the time of such contacts, Trans Union's correspondence with

---

[2] As a courtesy, Trans Union's counsel informed Plaintiff that Rule 33(a)(1) limits the number of written interrogatories that may be served on a party to twenty-five and asked that he revise his Interrogatories accordingly. Plaintiff responded by stating that counsel's "little ploy to burn up additional time for discovery makes [him] angry," and that he "[had] a good mind to research this to see if some type of sanction isn't available for this behavior."

Plaintiff's creditors related to the disputed information, Trans Union's reinvestigation results pertaining to Plaintiff's disputes, and Plaintiff's prior requests for his consumer disclosure. See Rutter Decl. at ¶ 8.

### 3.      Plaintiff's Third Set of Discovery Requests

On July 27, 2020, Plaintiff served Trans Union with his third set of discovery requests (the "Third Requests," attached hereto as Exhibit C), which consisted of one Request For Production of Documents seeking "a complete copy of the [his] credit file," along with documents Plaintiff believed were included in his credit file, including every correspondence Trans Union has received from Plaintiff, every change made to Plaintiff's credit file and credit score, every reason for the changes to Plaintiff's credit score, all derogatory credit history and information regarding the companies and reasons for Plaintiff's derogatory credit history for an unlimited time period. See Third Requests.  Trans Union timely responded (the "Third Response") on August 19, 2020, and, in addition to referring Plaintiff to its previously produced documents—which included each of the documents and information that Plaintiff requested including all correspondence from Plaintiff, his file creation date, all derogatory accounts and the entities that provided that information at the time of Plaintiff's dispute or request for his consumer disclosure, and changes, if any, made to Plaintiff's credit file following any disputes—provided a complete copy of Plaintiff's credit file, as that term is defined under the FCRA.

On August 25, 2020, Plaintiff filed the Motion, but he never requested a Rule 37 Conference or attempted informal resolution under Local Rule 37.1 and the Court's Order. See Order ¶ 5.  Indeed at no point after receiving Trans Union's Third Responses did Plaintiff make any effort to resolve his discovery dispute—and the Motion does not articulate any dispute—other

than stating that Trans Union simply "provided [him with nothing but a basic credit report," and

that:

> [Trans Union is] profiting off of our fear of our credit scores and they have our financial freedoms basically hostage with these multiple credit scores and then charge us high interest rates because you 3 [CRA's] have got [sic] together and made a pact to reinforce scores from a difference model that you so firmly said you didn't understand in your responses.

See Plaintiff's Correspondence Dated 06/16/2020 – 09/03/2020 ("Correspondence"), attached

hereto as Exhibit D. Even after Plaintiff filed the Motion, he refused Trans Union's requests for a

conference so the parties could evaluate if there was even a discovery dispute and, if so, if the

dispute could be resolved. See Correspondence.

## LEGAL STANDARD

Rule 26 recently was amended for the specific purpose of narrowing the scope of discovery.

See Jones v. Johnson, 801 Fed.Appx. 338, 351 (6th Cir. 2020) (Readler, J., concurring in part)

("Rule 26(b), recently amended, emphasizes that the 'scope of discovery' is subject to 'limit[ation]

by court order.'"); see also Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment

(noting a district court "must limit the frequency or extent of proposed discovery, on a motion or

on its own, if outside the scope permitted by Rule 26(b)(1)"). Permissible discovery must be both

"relevant to any party's claim or defense" and "proportional to the needs of the case." Fed R. Civ.

P. 26(b)(l); see also Wolcott v. Willis of Ohio, Inc., No. 4:16-cv-00316, 2016 WL 9307098, at *3

(N.D. Ohio Aug. 25, 2016). As such, in adjudicating the Motion, the Court should consider "the

importance of the issues at stake in the action, the amount in controversy, the parties' relative

access to relevant information, the parties' resources, the importance of the discovery in resolving

the issues, and whether the burden or expense of the proposed discovery outweighs its likely

benefit." Wolcott, 2016 WL 9307098, at *3.

In this very limited case, Plaintiff only makes farfetched claims, including that Defendants maintain "real" and "false" credit scores (see Complaint ¶¶ 30, 31), "Defendants intentionally sabatoged [sic] [his] FICO score" (id. at ¶ 34), "that the credit bureaus harbors [sic] a secret list of people blackballed due to prior credit mistakes" (id. at ¶ 35), and "that their [sic] should be 1 [credit scoring] model that everyone is subject to" (id. at ¶ 36). Trans Union has accommodated Plaintiff in a show of good faith and produced 244 pages of documents despite Plaintiff's refusal to narrowly tailor his requests or specify any alleged deficiencies. Plaintiff's efforts to obtain even more disproportionate, unclear discovery responses should be rejected by the Court, the Motion denied, and Trans Union awarded its expenses incurred in defending the Motion.

## ARGUMENT

**A.** **Plaintiff Failed To Comply With Federal Rule Of Civil Procedure 37 Or Local Rule 37.1 Requiring Him To Confer In Good Faith With Trans Union Before Filing The Motion.**

As an initial matter, the Motion is procedurally improper, as Plaintiff asks the Court to resolve a purported discovery dispute without first conferring with Trans Union in a good faith attempt to resolve the dispute. Rule 37 requires that a party moving to compel discovery responses include a certification that "the Movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a). Similarly, "Local Rule 37.1 requires that before a discovery dispute is referred to a judicial officer, 'the party seeking the disputed discovery' must certify to the court that they made sincere, good faith efforts to resolve the dispute." Plain Local School Dist. Bd. of Ed. v. DeWine, 335 F.R.D. 115, 118 (N.D. Ohio 2020) (citing Local Rule 37.1(a)(1)).

Here, not only did Plaintiff fail to confer under the requirements of Rule 37 and Local Rule 37.1, he expressly refused to confer. See Correspondence; see also Steinmetz v. Harrison, No.

1:14-cv-829, 2015 WL 4514541, at \*2 (S.D. Ohio July 24, 2015) ("Plaintiff's motion to compel is denied due to plaintiff's failure to show compliance with the Federal Rules of Civil Procedure and the Local Rules of this Court.").  Instead, he claimed Trans Union made "ridiculous excuses afforded to [them] by law," and baselessly asserted that Trans Union is "intentionally answering discovery to force a conference," and attempting to "burn more valuable discovery time." See Correspondence.  Indeed, it remains unclear if a discovery dispute actually exists as Plaintiff continues to refuse to identify the specific requests at issue and Trans Union provided Plaintiff with his entire credit file as term is defined by the FCRA.  To the extent a discovery dispute actually existed following the responses, it may have been resolved prior to Plaintiff filing the Motion had Plaintiff attempted informal resolution. See Mitchell v. Mike, No. 5:14-301-DCR, 2015 WL 8770073, at \*2-3 (E.D. Ky. Dec. 14, 2015) ("Here, [Plaintiff] has not provided sufficient information to allow the Court to determine whether he in good faith conferred or attempted to confer with the defendants regarding the dispute . . . Because [Plaintiff's] motion is deficient under Rule 37 of the Federal Rules of Civil Procedure and Local Rule 37.1, it will be denied.") (internal quotations and citations omitted); see also In re Johnson, 408 B.R. 115, 117 (Bankr. S.D. Ohio 2009) ("Because [defendant] did not fully satisfy the certification of good faith conferral requirement of Rule 37(a)(1), the Motion to Compel must be denied.").  Such antics fall far well short of the good-faith conferral requirement imposed by both Federal and Local Rules. See Aldridge v. City of Memphis, No. 05-2966-BV, 2007 WL 9706237, at \*2 (W.D. Tenn. May 25, 2007) (noting that even "going through the 'exercise of consulting' is not sufficient to satisfy the requirements of the rules").  Accordingly, the Court should deny the Motion.

**B.** **The Motion Fails To Identify In General, Much Less With Any Specificity, Which Discovery Responses Are At Issue.**

Never during any of Plaintiff's conversations with Trans Union's counsel, during the Court's September 17, 2020, Status Conference, nor in the Motion does Plaintiff anywhere identify which discovery requests are at issue or specify any alleged deficiencies in Trans Union's responses. See Aldridge, 2007 WL 9706237, at *2 (denying, in part, a motion to compel where plaintiff "failed to identify with specificity the deficiencies in each request about which he now complains," and where plaintiff "failed to confer in good faith" when "many of the[] discovery issues may [have been] resolved without court involvement").  Instead, it appears Plaintiff simply takes general issue with Trans Union's properly asserted objections to Plaintiff's discovery requests. See Correspondence, generally.

Other than vague references to "the needed information requested in Discovery," "Plaintiff's own credit file," "other requests for information pertaining to the clients [sic] own credit file," "counterfeit derogatory remarks about the Plaintiffs [sic] report," "the policy and procedures of the Defendants [sic] behavior when handling credit files," and "truthful answers to the interrogatories" in the Motion, Plaintiff makes no effort to identify a specific request at issue. See Aldridge, supra.  Plaintiff has not, and cannot, explain generally (much less specifically) how Trans Union's discovery objections are allegedly improper, what information or documents he sought that he feels Trans Union has not provided, or how any of his numerous discovery requests bare any relevance to any of his limited, and false, allegations, even if they were actionable. Accordingly, the Motion should be denied.

**C.**     **Trans Union Properly Responded To Plaintiff's Third Set Of Requests For Discovery, Which Trans Union Guesses May Be The Focus Of Plaintiff's Motion To Compel, By Providing All Relevant Information Requested Including Producing A Complete Copy Of Plaintiff's Credit File, As Well As Referring Plaintiff To Trans Union's Prior Responses.**

A review of the Motion indicates, as a guess, that it is limited to responses to the Third Requests; that is, information in Plaintiff's credit file and Interrogatory responses related to Trans Union's policies and procedures. <u>See</u> Motion.  As discussed in detail below, Trans Union properly responded to Plaintiff's Third Requests, providing him with his entire Trans Union credit file as that term is defined under the FCRA.

**a.**     **Plaintiff Falsely Asserts That Trans Union "Refuses To Disclose And Supply . . . His Own Credit File."**

Trans Union guesses Plaintiff may be seeking to compel additional responses to the Third Requests, including his entire credit file and responses to Interrogatory Nos. 12-15, and 26, regarding Trans Union's policies and procedures, even though they have no bearing on Plaintiff's claims, i.e., that Defendants maintain "real" and "false" credit scores (<u>see</u> Complaint ¶¶ 30, 31), "Defendants intentionally sabatoged [sic] [his] FICO score" (<u>id.</u> at ¶ 34), "that the credit bureaus harbors [sic] a secret list of people blackballed due to prior credit mistakes" (<u>id.</u> at ¶ 35), "that their [sic] should be 1 [credit scoring] model that everyone is subject to" (<u>id.</u> at ¶ 36) and that "the fake score generated by the bureaus is used to manipulate the citizen in applying for small loans prepaid credit cards or credit with no collateral in small amounts" (<u>id.</u> at ¶ 38).

Specifically, the about Requests seek production of every correspondence Trans Union has received from Plaintiff, every change made to Plaintiff's credit file and credit score, every reason for the changes to Plaintiff's credit score, all derogatory credit history and information regarding the companies and reasons for Plaintiff's derogatory credit history for an unlimited time period. <u>See</u> Third Requests.  In response, Trans Union objected to why and how the specific terms were

objectionable, the failure to limit the scope of the requests to any specific credit score, tradeline, or company, and the excessive and confidential items sought. Moreover, Trans Union produced Plaintiff's full credit file, as that term is statutorily defined, and referred Plaintiff to Trans Union's previous document production in the Second Responses, which included all of the appropriate information Plaintiff seeks to compel, including all correspondence received from Plaintiff, his file creation date, all derogatory accounts and the entities that provided that information at the time of Plaintiff's dispute or request for his consumer disclosure, and changes, if any, made to Plaintiff's credit file following any disputes.[3] See Rutter Decl. at 9.

Courts throughout the country have held that a consumer report—as provided to Plaintiff—constitutes a consumer's "file" for purposes of a consumer reporting agency's obligations under the FCRA. See, e.g., Gillespie v. Trans Union Corp., 482 F.3d 907, 909 (7th Cir. 2007) (finding that consumer reports constitute the term "file" under the FCRA); see also Shaw v. Experian Info. Solutions, Inc., 891 F.3d 749, 759 (9th Cir. 2018) (finding similar); Cortez v. Trans Union, LLC, 617 F.3d 688, 711 (3rd Cir. 2010) (finding similar); Wilson v. Equifax Info. Servs., LLC, No. 2:19-cv-00055-RFB-NJK, 2020 WL 2771184, at *6 (D. Nev. May 27, 2020) (finding similar); Danehy v. Experian Info. Solutions, Inc., No. 5:18-cv-17-FL, 2018, WL 4623647, at *3 (E.D. N.C. Sept. 26, 2018) (noting that the Fourth Circuit has yet to hear the issue, but adopting "the prevailing interpretation among other circuits" finding that a consumer report constitutes a "file" under the FCRA). As such, Trans Union provided Plaintiff with his credit file, as requested, and, accordingly, the Motion should be denied.

---

[3] Although not included in the Complaint, the Motion references unspecified "counterfeit derogatory remarks about the Plaintiffs [sic] report." See Motion. Trans Union is unclear as to what Plaintiff is referring to, as all derogatory remarks were deleted as required after he disputed them, i.e., a Capio Partners collection account reported on his file in April 2019 and was deleted in August 2019, and a Keybridge medical collection account reported on his file in May 2016 and was deleted in October 2019, and such information is contained within Trans Union's previous document production.

The remainder of the "documents" Plaintiff wrongly asserted are part of his credit file, such as all changes made to Plaintiff's credit file and credit score over an unlimited period of time, are outside the scope of permissible discovery. See Second Requests.  Even if this information was within the proper scope of discovery, Trans Union cannot possibly guess what is meant by the supposed "changes" to Plaintiff's credit file or credit score.  In any event, accounting for any such "changes" is vastly disproportionate to the needs of the case.  Indeed, to provide Plaintiff with what he purports to request would require Trans Union to scour its consumer reporting database for each day beginning on August 1, 1990 (when Plaintiff's Trans Union credit file was created),[4] to locate information regarding Plaintiff and then create documents to include that responsive information.  Case law holds Trans Union is not required to create documents to respond to discovery. See Harris v. Advance Am. Cash Advance Centers, Inc., 288 F.R.D. 170, 173 (S.D. Ohio 2012) ("[A] party need only produce existing documents, and not create documents, in response to a Rule 34 document request.") (citing In re Porsche Cars N. Am., Inc., No. 2:11-md-2233, 2012 WL 436143, at *9 (S.D. Ohio Sept. 25, 2012)).  Even if it were, Plaintiff can offer no argument that such information is relevant to his claims, let alone that it is proportional to the needs of the case.

Plaintiff, with full knowledge that he has been supplied with his entire Trans Union credit file (see Correspondence), still falsely represents to the Court that Trans Union "ignored" his request and "refuses" to provide him with these documents. See Motion.  This is a clear misrepresentation to the Court, and Plaintiff now wastes the time and resources of both Trans

---

[4] Trans Union maintains credit information regarding more than 215 million active consumer files, including some 3.5 billion account tradelines.  In order to keep credit files current, Trans Union processes more than 2 billion items of information each month, from over 90,000 furnishers, related to approximately 215 million consumer files, including Plaintiff, Todd Sterling.

Union and this Court asking the Court to compel the production of documents Trans Union has already produced to Plaintiff. Accordingly, the Motion should be denied.

b. **Plaintiff Vaguely And Falsely Asserts That The Discovery Requests Seek Information Relevant To His Allegations, But Cannot Demonstrate That The Requests Are Relevant Or Proportional To The Needs Of The Case, As They Seek Information And Documents Far Beyond His Narrow Claims.**

Plaintiff asserts that he has the right to access "the policy and procedures of the Defendants [sic] behavior when handling credit files." See Motion. While the Motion does not identify any specific policies or procedures, Trans Union guesses that the language refers to Trans Union's responses to Interrogatory Nos. 12-15, and 26 (policies and procedures pertaining to collection accounts and consumer disputes, punitive procedures against furnishers, and procedure for ensuring credit scoring conformity among credit bureaus), which are the only discovery requests seeking information related to Trans Union's policies and procedures. See Second Requests, Interrogatory Nos. 12-15, 26.

As an initial matter, Plaintiff cannot meet his threshold requirement that these discovery requests are relevant to his claims. As discussed above, Plaintiff's claims are limited to the allegations that Defendants maintain "real" and "false" credit scores (see Complaint at ¶¶ 30, 31), "harbors [sic] a secret list of people blackballed due to prior credit mistakes" (id. at ¶ 35), and that "the fake score generated by the bureaus is used to manipulate the citizen in applying for small loans prepaid credit cards or credit with no collateral in small amounts" (id. at ¶ 38). He cannot reasonably claim that Trans Union's policies and procedures related to "counterfeit derogatory remarks"[5] are within the scope of Rule 26(b). Further, Trans Union has a myriad of policies and

---

[5] Presumably, referring to the Capio Partners and Keybridge collection accounts previously appearing on Plaintiff's file. See supra, footnote 3.

procedures to ensure accurate reporting, and Plaintiff's vague and excessive interrogatories seek a vast number of these policies and procedures certainly unrelated to Plaintiff's limited claims.

Plaintiff's requests for Trans Union's policies and procedures in the Motion, to the extent Trans Union has correctly guessed them, seek either non-existent or clearly irrelevant information disproportional to the needs of the case. Indeed, it is axiomatic that documents regarding policies and procedures pertaining to collection accounts and the handling of consumer disputes, as well as "[Trans Union's] behavior when handling credit files" (see Motion), are not relevant to Plaintiff's claims detailed above. Even if the requests were proper, many, if not all, of the responsive documents and interrogatory information would need to be created specifically to respond to the requests, which Trans Union is not required to do. See Harris, 288 F.R.D. at 173 ("[A] party need only produce existing documents, and not create documents, in response to a Rule 34 document request.") (citing In re Porsche, 2012 WL 436143, at *9).

Plaintiff improperly fails to demonstrate the relevancy of his discovery requests, as required, beyond broad, conclusory statements. Plaintiff simply claims that he "needs to have lawful access to Discovery and even a copy of his own credit file would show proof of some of the complaints listed in this suit," and his unspecified discovery requests would provide "important evidence" which would "help prove his case." See Motion. Such failure to state why any such information or documents are relevant dooms the Motion, as "once an objection to the relevance of the information sought is raised, the burden shifts to the party seeking the information to demonstrate that the requests are relevant to the subject matter involved in the pending action." Allen v. Howmedica Leibinger, Inc., 190 F.R.D. 518, 522 (W.D. Tenn. 1999). Because Plaintiff has not made, or even attempted to make, any such showing, the Motion should be denied.

Regardless, assuming arguendo Plaintiff could identify the information sought and not produced, the Motion still fails, as Plaintiff is unable to show that the discovery he seeks is proportional to the needs of the case.  As outlined above, Plaintiff makes a variety of farfetched and baseless allegations which center around his apparent issue with the existence of multiple credit scoring models. See Complaint, generally.  However, Plaintiff's Interrogatories seek information far beyond the scope of these narrow (to the extent they are discernable) claims to essentially seek all of Trans Union's policies and procedures for an unlimited time period.  Trans Union would be required to search all of its policies and procedures for an unlimited time period and determine whether such procedures were associated with "permitting an entity to place a collection account on a consumers [sic] credit report," "the procedure from the first step to the determination step how you handle a consumers [sic] credit report dispute on any given item," "punitive procedures [Trans Union] take[s] against any entity found to have placed a fradulant [sic] collection account on a consumers [sic] report," "[h]ow [Trans Union] determines who can and cannot place collections accounts on a consumers [sic] crfedit [sic] report," and the "process [Trans Union] use[s] to ensure that a consumer has the same credit score on all 3 credit bureaus." See Second Requests, Interrogatory Nos. 12-15, 26.

As noted supra, Rule 26 recently was amended for the specific purpose of narrowing the scope of discovery. See Jones, 801 Fed.Appx. at 351 (Readler, J., concurring in part) ("Rule 26(b), recently amended, emphasizes that the 'scope of discovery' is subject to 'limit[ation] by court order.'").  Notwithstanding Plaintiff's failure to ascertain how unspecified discovery requests are relevant, permissible discovery must also be "proportional to the needs of the case." Fed R. Civ. P. 26(b)(l); see also Wolcott, 2016 WL 9307098, at *3.  Because Plaintiff has continuously refused

to narrow his discovery requests in the face of Trans Union's valid objections, the Motion should be denied.

### D.      Plaintiff Should Be Required To Pay Trans Union's Reasonable Costs And Fees Incurred In Preparing Its Response In Opposition To The Motion.

Rule 37 was substantially revised in 1970 to encourage the more frequent use of sanctions for abuse of the discovery process. See Cunningham v. Hamilton Cnty., 527 U.S. 198, 208 n.5 (1999). Rule 37(a)(5)(B) requires that the party who brings a motion to compel which is denied pay the opposing party its reasonable expenses incurred in opposing the motion, including attorneys' fees, unless the motion was substantially justified or other circumstances exist making such an award unjust. See DiOrio v. TMI Hospitality, No. 4:15-cv-1710, 2017 WL 2455798, at *2 (N.D. Ohio May 19, 2017).

Here, the Motion was not substantially justified, as it seeks to compel Trans Union to produce documents already produced and explained to Plaintiff, respond to discovery requests which are clearly outside the scope of Plaintiff's (questionable) allegations, and fails to demonstrate that Trans Union's objections to the discovery requests were improper or offer any justification as to the relevance of the sought after information. Moreover, Plaintiff not only failed, but refused to comply with the meet and confer requirements of Rule 37 and Local Rule 37.1. See Correspondence. No justification for the Motion exists, much less "substantial justification," as set forth in Rule 37(a)(5)(B). See DiOrio, 2107 WL 2455798, at *3 ("The undersigned agrees with Defendant that Plaintiff's failure to comply with this Court's Local Rules, specifically Local Rule 37.1, negates a finding of substantial justification.").

Similarly, there are no other circumstances that would make an award of expenses unjust. Trans Union's Responses to Plaintiff's Requests were made in good faith and in accordance with Rules 26, 33, 34 and 36. Plaintiff's refusal to comply with the meet and confer requirements of

Rule 37 and Local Rule 37.1 and improper filing of the Motion required Trans Union to incur substantial attorneys' fees in opposing the Motion.  Accordingly, an award of expenses to Trans Union is well justified.

## CONCLUSION

For all the foregoing reasons, Trans Union respectfully requests that the Court deny the Motion and award Trans Union its fees and costs incurred in defending against the Motion, along with such other relief as the Court deems equitable and just.

Respectfully submitted,

*s/ Evan R. Rutter*
Scott E. Brady, Esq. (IN #30534-49)
Evan R. Rutter, Esq. (IN #35748-49)
Schuckit & Associates, P.C.
4545 Northwestern Drive
Zionsville, IN  46077
Telephone:  317-363-2400
Fax:  317-363-2257
E-Mail:  sbrady@schuckitlaw.com
E-Mail:  erutter@schuckitlaw.com

*Lead Counsel for Defendant Trans Union, LLC (improperly identified as TransUnion Credit)*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing has been filed electronically on the **2nd day of October, 2020**.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's electronic filing.

| None | |
|---|---|

The undersigned further certifies that a true copy of the foregoing was served on the following parties via First Class, U.S. Mail, postage prepaid, on the **2nd day of October, 2020**, properly addressed as follows:

| **<u>Pro Se Plaintiff</u>**<br>R. Todd Sterling<br>568 Haller<br>Lima, OH  45801 | |
|---|---|

*s/ Evan R. Rutter*
Scott E. Brady, Esq. (IN #30534-49)
Evan R. Rutter, Esq. (IN #35748-49)
Schuckit & Associates, P.C.
4545 Northwestern Drive
Zionsville, IN  46077
Telephone:  317-363-2400
Fax:  317-363-2257
E-Mail:  sbrady@schuckitlaw.com
E-Mail:  erutter@schuckitlaw.com

*Lead Counsel for Defendant Trans Union, LLC (improperly identified as TransUnion Credit)*