UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

R. Todd Sterling,                                    Case No. 3:19-cv-02993

               Plaintiff,

v.                                                   ORDER

Experian Credit, et al,

               Defendants

### I. INTRODUCTION & BACKGROUND

Before me is Plaintiff R. Todd Sterling's motion to compel Defendant Trans Union, LLC, to provide certain information through discovery. (Doc. No. 33). Trans Union filed a brief in opposition, (Doc. No. 45), and Sterling replied. (Doc. No. 46). For the reasons that follow, Sterling's motion is granted in part and denied in part.

The current discovery dispute is not the first between the parties. On May 11, 2020, Sterling filed his first motion to compel but withdrew it after speaking with counsel for Trans Union, Evan Rutter. Rutter informed Sterling the motion was procedurally improper because Sterling had not made a good-faith attempt to resolve the issue prior to filing the motion to compel. (Doc. Nos. 33, 34, 35). At some point after this, Sterling served Trans Union with additional discovery requests. Apparently unsatisfied with Trans Union's response to those requests, Sterling filed a second motion

to compel on August 24, 2020, again without first contacting Trans Union to resolve the dispute. I held a conference to address the matter on September 27, 2020, and set the matter for briefing.

## II. DISCUSSION

### A. Rule 37(a)(1)

Trans Union argues Sterling's motion should be denied because Sterling failed to comply with Rule 37 of the Federal Rules of Civil Procedure, Local Rule 37.1, and the case management conference order I issued on March 25, 2020. While I am disappointed in Sterling's failure to confer with Trans Union in good faith, this dispute is now before me for review. If I were going to deny this motion for procedural non-compliance, I could have done so during the conference.

### B. Rule 26

Sterling also seeks: (1) a copy of his "credit file" from Trans Union; and (2) Trans Union's policies and procedures when handling credit files.[1] (Doc. No. 40 at 2). Trans Union claims the information Sterling seeks to compel here is outside the scope of discovery.

"It is well established that the scope of discovery is within the sound discretion of the trial court." *Pittman v. Experian Info. Solutions*, 901 F.3d 619, 642 (6th Cir. 2018) (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993)). Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of discovery, providing that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).

---

[1] Trans Union also argued Sterling's motion should be denied because Sterling fails to identify with specificity which discovery responses with which he takes issue. While I agree it can be difficult to ascertain the exact material Sterling seeks to compel, Sterling does identify some specific areas. I address these areas in the present order. To the extent Sterling's motion to compel seeks production of information that is not addressed here, his motion is denied without prejudice. No further motion to compel shall be filed without prior leave of court.

Sterling's Complaint alleges claims of fraud and violations of the Fair Credit Reporting Act.[2] "On a motion to compel discovery, '[t]he moving party bears the burden of demonstrating relevance.'" *White v. City of Cleveland*, 417 F, Supp. 3d 896, 902 (N.D. Ohio 2019) (quoting *CSX Transp., Inc. v. Columbus Downtown Dev. Corp.*, No. 2:16-cv-557, 2019 WL 1760069, at *4 (S.D. Ohio Apr. 22, 2019)). Thus, Sterling must show the information he seeks is relevant to either his fraud claims or his claimed violation of the FCRA.

1. **Sterling's Credit File**

In a request for production of documents, Sterling requested "a complete copy" of his credit file, which he claims must include all of the "changes made to it over the years including the changes to the credit scores and the reasons for the changes to the scores." (Doc. No. 45-3 at 2). Trans Union claims it provided Sterling with a copy of his "credit file" as that term has been interpreted by other federal circuit and district courts. But Sterling claims the copy provided to him was from 2018 and did not include "the updates or credit repairs" he applied to attempt to obtain a mortgage loan.[3] (Doc. No. 46 at 3).

I agree with Trans Union that much of the information Sterling seeks here is not relevant to his claims in the present case. Sterling's fraud claims rely primarily on the harm he suffered, in or around September 2019, from being denied a mortgage loan that Defendants credit reporting made him believe he would receive and from paying for a monthly credit monitoring service. It is not readily apparent how information such as: "all correspondence received from [Sterling] that is in the credit file," all "changes made to [his credit score] over the years including … the reasons for the

---

[2] Although Sterling's complaint does not cite the Fair Credit Reporting Act as the source of his claims, I construe his complaint liberally, and interpret his allegations to be a claim that Trans Union violated the FCRA by failing to follow reasonable procedures to assure maximum possible accuracy of consumer reports. *See* 15 U.S.C. § 1681e(b); 15 U.S.C. § 1681n(1); (Doc. No. 1-2 at 3) ("Plaintiff alleges . . . the credit [bureaus] are not updating [ ] scores as diligently as they should be ….").
[3] It is not clear from the record before me what these updates or credit repairs might be.

changes to the scores," and, "his entire derogatory credit history," (Doc. No. 45-3), is relevant to his claims flowing from the credit report issued on September 30, 2019. And this information is far broader than necessary under the interpretation of the term "credit file" that has been adopted by various federal circuit and district courts. *See Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 759 (9th Cir. 2018) (interpreting "file" under the FCRA to mean "all information on the consumer that is recorded and retained by a consumer reporting agency that might be furnished, or has been furnished, in a consumer report on that consumer"); *see also Danehy v. Experian Info. Solutions, Inc.*, No. 5:18-cv-17-FL, 2018 WL 4623647, at *3 (E.D.N.C. Sept. 26, 2018) (collecting cases and adopting standard from *Shaw* after finding it represented the prevailing interpretation among circuits). Because I find the reasoning of these courts persuasive, and because I am not aware of any precedent from within the Sixth Circuit that would counsel otherwise, I conclude that the information relevant to Sterling's claim under the FCRA—and thus, the information Sterling is entitled to—is all information on him that is recorded and retained by Trans Union that might be furnished, or has been furnished, in a consumer report on Sterling.

But I agree with Sterling that he is entitled to information dating beyond 2019. Thus, if the production from Trans Union is limited to records from 2018 or earlier, Sterling is entitled to further production, including his credit file, as I have defined that term above, through October 2019.[4]

---

[4] In its motion in opposition, Trans Union states that certain information from 2019 was provided to Sterling in Trans Union's previous document production. (Doc. No. 45 at 11). This suggests that Trans Union has provided Sterling with a more recent version of his credit file than Sterling claims. If Trans Union has in fact provided Sterling with records dating through October 2019 that comport with the scope of discovery I have identified here, then Trans Union has fulfilled its discovery obligations with respect to Sterling's request for his credit file.

### 2. Trans Union's Policies and Procedures

In his motion to compel, Sterling argues he is entitled to the "policies and procedures of the Defendant[s'] behavior when handling credit files[.]" (Doc. No. 40 at 1). Trans Union contends that Sterling's request is overly broad and seeks information that either does not exist or is not relevant to the needs of this case. While I agree that Sterling's request for all of Trans Union's policies and procedures for credit reporting would encompass information that is not relevant to Sterling's claims, and that production of this information would be overly burdensome, Sterling is entitled to production of the policies that govern how his credit score was calculated during the 2019 calendar year. Trans Union shall produce these policies.

### C. Rule 33 & Rule 37

Federal Rule of Civil Procedure 33(b)(1) provides: "Each interrogatory shall be answered separately and fully in writing under oath, unless objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable." If a party to whom an interrogatory was sent fails to answer, Federal Rule of Civil Procedure 37(a)(2)(B) provides that "the discovering party may move for an order compelling an answer."

Sterling claims Trans Union "completely avoided every question asked" and seeks to compel "truthful answers to the interrogatories." (Doc. No. 40 at 1). But I cannot determine whether Trans Union's responses were deficient because those responses were not submitted for my review. Thus, Sterling's motion to compel is denied without prejudice as to this request.

Going forward, Sterling will be held to full compliance with the meet and confer requirement contained in Fed. R. Civ. P. 37, Local Rule 37, and this Court's March 25, 2020 Case Management Conference Order. (*see* Doc. No. 20). Sterling will also be expected to comply with Rule 33(a)(1), which limits the number of interrogatories to 25. Fed. R. Civ. P. 33(a)(1). Should

Sterling wish to have more than 25 interrogatories answered by Trans Union, he shall move for leave to do so in accordance with the Federal Rules of Civil Procedure.

Sterling also claims Trans Union ignored a second request for production of documents, which was sent to Trans Union on July 17, 2020. (Doc. No. 40 at 1). Trans Union denies this allegation. Trans Union attached two different requests for production of documents to its motion in opposition. One of these, which indicates that it was mailed in April 2020, is titled "Plaintiff's Motion for First Request for Production of Documents from Trans Union Requested Documents." (Doc. No. 45-2 at 4). A second, which indicates that it was mailed sometime in July 2020, is titled "REQUEST FOR PRODUCTION OF DOCUMENTS" and contained Sterling's request for his credit file—an issue I addressed earlier in this order. (Doc. No. 45-3 at 2). This evidence suggests that the latter request for production of documents is the "ignored" request to which Sterling is referring. If this is so, then my analysis from Section II.B.1 of this order applies: Trans Union is required to provide Sterling with is all of the information on him, through October 2019, that was recorded and retained by Trans Union and that might be furnished, or has been furnished, in a consumer report on Sterling.

**D.     Rule 37(a)(5)**

Trans Union moved for expenses under Rule 37(a)(5)(B) of the Federal Rules of Civil Procedure. (Doc. No. 45 at 16). Under Rule 37(a)(5)(B), the court must, after giving an opportunity to be heard, require the movant to pay the party who opposed the motion its reasonable expenses incurred in opposing the motion unless the motion was substantially justified or other circumstances make an award of expenses unjust. But Sterling's motion was not denied in its entirety. Instead it was granted in part and denied in part, meaning it is governed by Rule 37(a)(5)(C).

Under Rule 37(a)(5)(C), the court may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion. Here, I conclude that such apportionment is inappropriate at

this time. While Trans Union is correct that Sterling failed to comply with the meet and confer requirement established by the Fed. R. Civ. P. 37, Local Rule 37, and this Court's March 25, 2020 Case Management Conference Order, Sterling is proceeding pro se, and I find his unfamiliarity with the procedural rules that govern litigation in federal court counsels against exercising my discretion to award expenses against him. That said, going forward Sterling will be held to full compliance with the Federal Rules of Civil Procedure, as well as the Northern District of Ohio's Local Rules, and any order of this Court.

### III.  CONCLUSION

Sterling's motion is granted in part and denied in part. Sterling's motion is granted as to any policies that are relevant to determining his credit score in September 2019, and as to Sterling's "credit file" through October 2019. Sterling's motion is denied as to the remainder of Trans Union's policies, and as to his request for an order compelling Trans Union to give truthful answers to his interrogatories. Trans Union's motion for fees is denied.

Trans Union shall provide any policies relevant to determining Sterling's credit score in the two months prior to September 30, 2019, as well as a copy of his credit file through October 2019.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge